USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-12-15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**MALE SUNTER,**

                          **Petitioner,**

          - against -

**MICHAEL CAPRA,**

                          **Respondent.**

**REPORT AND**
**RECOMMENDATION**

**13-CV-1551 (CM) (RLE)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/29/16

**TO THE HONORABLE COLLEEN McMAHON, U.S.D.J.:**

### I. INTRODUCTION

*Pro se* Petitioner Male Sunter ("Sunter") seeks a writ of habeas corpus pursuant to the

Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. (Petition for Writ

of Habeas Corpus ("Pet.").) On July 11, 2006, a jury convicted Sunter of robbery in the first

degree (N.Y. Penal Law § 160.15[4]), robbery in the second degree (N.Y. Penal Law §

160.10[1]), criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03[2]),

and criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02 [4]).

(Transcript ("Tr.") at 498-502.) Sunter alleges that his incarceration violates the United States

Constitution because: (1) the trial court's *Sandoval* [*People v. Sandoval*, 34 N.Y.2d 371 (1974)]

ruling denied him a fair trial; (2) the court denied him *Brady* [*Brady v. Maryland*, 373 U.S. 83

(1963)] material; (3) the trial court's jury instructions denied him a fair trial; (4) there was

prosecutorial misconduct; (5) he received ineffective assistance of trial counsel; (6) he received

ineffective assistance of appellate counsel; and (7) he was denied due process "during the

entirety of the trial." (Pet. at ¶ 13.) For the reasons set forth below, I recommend that Sunter's

petition be **DENIED**.

2/29/2016    has reviewed the Report, the Petitioner's objections thereto and
The court    the People's response (such as it is). I conclude that the objections
had merit. I adopt the Report as the opinion of the court the denial
into the following amendations: the objection addressed, but because
of the ___ first "charge fails, not only for the reasons stated, but because
___ no constitutional issue is raised by any error of state law.

There was no mischaracterization of evidence (p. 24, Report) when the prosecutor, responding to a suggestion planted by defense counsel, responded by arguing the unlikelihood that the victim, of the crime had concocted a scheme to plant bullets at the scene. [The prosecutor]

~~were prejudicial~~

With these two amendments the Court's opinion Report becomes the court's opinion.

The Petition does not raise any issue of constitutional substance. Leave to appeal is NOT granted. I certify that any appeal would be taken in bad faith.

Colleen McMahon
USDJ

## II. FACTUAL BACKGROUND

In 2001, Sunter moved from New York to Virginia. (Tr. at 268-69, 295-96.) About twice a month, Sunter drove to New York to buy large quantities of cocaine. (*Id.* at 297-300.) He then sold the cocaine as powder or crack in Virginia. (*Id.*) In 2004, Sunter met Nicholas Garcia ("Garcia") through a drug-dealing associate. (Tr. at 270.) He called Garcia in advance to arrange a drug purchase for April 29, 2005, in New York. (*Id.* at 274-75.) Sunter ordered 12.5 ounces of cocaine for $8,200. (*Id.*) He then drove to New York with two associates, Mike Knobling ("Knobling") and a man identified only as "Tyrone." (*Id.* at 276-78, 301; Doc. No. 26 at 2.)

On April 29, 2005, at 5:30 p.m., the three men met Garcia in New York. (Tr. at 312-13.) Inside Garcia's car, Sunter paid him $8,200. (*Id.* at 312-16.) Garcia left the car, went into a nearby building, and returned with a brick-size package for Sunter. (*Id.* at 316-17.) While driving back to Virginia, Sunter realized that the package was not cocaine. (*Id.* at 317-19.) Sunter returned to New York, seeking either a substitute package or a refund. (*Id.* at 284.) When he arrived back in New York, Sunter parked his car by the apartment of Lucinda Bello ("Bello"), Garcia's girlfriend, and waited for Garcia to appear. (*Id.* at 283-84, 311.)

At 8:00 p.m. that evening, Garcia and Bello returned to her apartment. (Tr. at 36-40.) Garcia testified that a man wearing glasses, identified by the prosecutor as Tyrone, accosted him and Bello at gunpoint inside of their car. (*Id.* at 40, 429.) Sunter was next to Tyrone, and Knobling drove Sunter's car in front of Garcia's car, blocking his path. (*Id.* at 42.) Tyrone hit Garcia over the head and legs with the gun and took his wallet and car keys. (*Id.* at 42-43.) Tyrone handed the gun to Sunter and got behind the wheel of Garcia's car. (*Id.* at 43.) Garcia pulled Tyrone from the driver's seat, began punching him, and wrestled him down to restrain

2

him. (*Id.* at 43-44.) Sunter aimed the gun at Garcia and shot at him twice, missing both times.
(*Id.* at 44-46.) The gun then jammed, and Sunter fled on foot. (*Id.* at 46-48.) Garcia, two
bystanders, and a police officer pursued him. (*Id.*) Sunter dropped the gun as police caught him.
(*Id.* at 47-48.) Police recovered the gun, two spent shell casings, and three undischarged bullets
from the street. (*Id.* at 20.)

## III. PROCEDURAL HISTORY

### A. Verdict and Sentencing

At trial on July 11, 2006, Sunter was charged with second-degree attempted murder, first-
degree robbery, second-degree robbery, second-degree criminal possession of a weapon, and
third-degree criminal possession of a weapon. (Tr. at 465, 469, 471, 473, 475.) The jury found
him guilty of the robbery and weapons charges, but could not agree on the attempted murder
count. (Tr. at 498-502.) The court sentenced Sunter to concurrent determinate sentences on the
robbery and weapons convictions. (Sentencing Transcript ("S. Tr.") at 10-13.). The longest
individual term was twenty-five years.

### B. Direct Appeal

On September 19, 2007, Sunter filed a counseled brief in the Appellate Division, First
Department, contending that: (1) the jury's verdict was against the weight of the evidence; (2)
the trial court's *Sandoval* ruling was an abuse of discretion; (3) the prosecutor committed
misconduct in summation; and (4) the sentence was excessive. (Doc. No. 25, Ex. A.) Sunter
also asserted in a *pro se* supplemental brief that: (1) his pretrial and trial attorneys provided
ineffective assistance; (2) the prosecution violated his due process rights by introducing a
different theory of robbery at trial than charged in the indictment; (3) the trial court erred in its
instruction on temporary lawful possession by not providing an "acquittal first" instruction and

3

refusing to give a justification charge; and (4) the Appellate Division should order a
reconstruction hearing to create a record of the trial court's purported failure to make a jury note
part of the record. (Doc. No. 25, Ex. B.)

On December 2, 2008, the Appellate Division unanimously modified Sunter's sentence
"in the interests of justice" by reducing his sentence to twenty years but otherwise affirming the
verdict. *People v. Sunter*, 57 A.D.3d 226, 226 (2008). The court found that the verdict was not
against the weight of the evidence and that there was no basis for disturbing the jury's credibility
determinations. *Id.* The Appellate Division also found that the *Sandoval* ruling was a proper
exercise of discretion, and that the trial court properly exercised discretion in denying Sunter's
mistrial motion based on the prosecutor's summation. *Id.* at 227. The Appellate Division also
rejected Sunter's supplemental claims, finding that: (1) the claim that the court should have
instructed the jury on justification was "meritless"; (2) the ineffective assistance of counsel claim
was unreviewable on direct appeal "because it involve[d] matters outside the record"; and (3) his
remaining claims were "unpreserved" and therefore, not reviewable. *Sunter*, 57 A.D.3d at 227.
The Court of Appeals denied Sunter's application for leave to appeal on August 1, 2011. (Doc.
No. 25, Ex. Y.)

## C. Motion to Vacate Judgment of Conviction

On December 21, 2009, Sunter filed a *pro se* motion to vacate his conviction pursuant to
New York Criminal Procedure Law ("C.P.L.") § 440.10. (Doc. No. 25, Ex. I.) He argued that:
(1) the trial court erred in its jury instruction on temporary lawful possession and by refusing to
give a justification charge; (2) the prosecutor improperly bolstered witness testimony at trial; (3)
the prosecutor engaged in misconduct because he knew or should have known that Sunter and
Garcia had a prior relationship and the prosecutor's comments denying the relationship misled

4

the jury; and (4) he received ineffective assistance of pretrial and trial counsel. (*Id.*)

On April 2, 2012, the Supreme Court, New York County, denied Sunter's motion. (Doc. No. 25, Ex. L at 11.) The court rejected Sunter's first claim because that issue had been reviewed on direct appeal. (*Id.* at 5); *see also Sunter*, 57 A.D.3d at 227. The court rejected the second claim because Sunter failed to raise the bolstering issue on direct appeal. (Doc. No. 25, Ex. L at 5.) *See* C.P.L. § 440.10(2)(c). The § 440.10 court also dismissed the prosecutorial misconduct claim, finding that the prosecutor neither conceded nor "deliberately mislead [sic] the jury about the existence of . . . a relationship" between Garcia and Sunter. (Doc. No. 25, Ex. L at 6.) The court rejected the ineffective assistance of counsel claim on the merits. (*Id.* at 8.) On November 8, 2012, the Appellate Division denied Sunter's leave to appeal. (Doc. No. 25, Ex. P.)

**D. *Coram Nobis* Motion**

On June 23, 2010, Sunter filed a *pro se coram nobis* motion in the Appellate Division, First Department. (Doc. No. 25, Ex. S.) He alleged that appellate counsel was ineffective because she did not argue that: (1) the prosecutor elicited perjured testimony; (2) Sunter received ineffective assistance of trial counsel; and (3) the prosecutor committed *Rosario [People v. Rosario*, 9 N.Y.2d 286 (1961)] and *Brady* violations. (*Id.*) On March 3, 2011, the Appellate Division denied Sunter's application for a writ of error *coram nobis*. (Doc. No. 25, Ex. U.)

On March 26, 2011, Sunter filed a motion for reconsideration in the Appellate Division. (Doc. No. 25, Ex. Z.) Sunter asserted that: (1) the prosecutor made improper arguments in summation; and (2) he was entitled to a justification charge at trial. (*Id.*) The Appellate Division denied the motion on October 11, 2011. (Doc. No. 25, Ex. CC.) The Court of Appeals denied Sunter leave to appeal on February 2, 2012. (Doc. No. 25, Ex. G.)

## IV. THRESHOLD ISSUES

### A. Timeliness

Under the AEDPA, a petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. 28 U.S.C. § 2244(d)(1)(A). A conviction becomes final when the "time to seek direct review in the United States Supreme Court by writ of certiorari expires," that is, ninety days after the final determination by the state court. *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (quoting *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)). Under § 2244(d)(2), the statute of limitations is tolled while a state post-conviction or other collateral review application is pending. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). For example, the AEDPA's statute of limitations is tolled from the date the petitioner files a § 440.10 motion until the date the Appellate Division denies the petitioner leave to appeal that decision. *See Wilkins v. Kirkpatrick*, No. 06 Civ. 2151 (SCR)(LMS), 2009 WL 3644082, at *5 n.1 (S.D.N.Y. Nov. 4, 2009).

On February 26, 2009, the Court of Appeals denied Sunter's application for leave to appeal. (Doc. No. 25, Ex. H.) His conviction thus became final on May 27, 2009, ninety days later. The AEDPA statute of limitations ran for 208 days from May 27, 2009, to December 21, 2009, the day on which Sunter filed his C.P.L. § 440.10 motion. (Doc. No. 25, Ex. I.) *See Ruiz v. Poole*, 566 F. Supp. 2d 336, 340 n.1 (S.D.N.Y. 2008) (applying prison mailbox rule to incarcerated *pro se* litigant filing C.P.L. § 440.10 motion). The AEDPA one-year period was tolled from December 21, 2009, to November 8, 2012, when the Appellate Division denied Sunter leave to appeal the § 440.10 court's decision. When the one-year period resumed, Sunter had 157 days to file his petition. He filed his petition on February 28, 2013, within those 157 days. (Pet. at ¶ 13.) Therefore, the Petition was timely filed.

6

## B. Exhaustion

### 1. Standard of Review

A court may not grant a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor,* 404 U.S. 270, 275 (1971); *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir. 1997). To satisfy substantive exhaustion, which is not an exacting standard, a petitioner's claim before the state courts must have been federal or constitutional in nature. *See Cordero v. Rivera,* 677 F. Supp. 2d 684, 696 (S.D.N.Y. 2009). A petitioner must have "fairly presented" his claim to state courts by apprising them of "'both the factual and the legal premises of the claim [he] asserts in federal court.'" *Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye v. Att'y Gen. of State of N.Y.,* 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)). Procedurally, the petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. *See Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir. 1994). The petitioner must raise each federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'" *Id.* (quoting *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir. 1990)).

A petitioner is deemed to have exhausted state judicial remedies when the issue has been fairly presented in the state courts or the petitioner has otherwise given the state courts a fair opportunity to redress the federal claim. *Duncan v. Henry,* 513 U.S. 364, 366-67 (1995) (citing *Picard,* 404 U.S. at 270). Generally, the petitioner must have referred to the relevant federal constitutional provisions in the briefs submitted to state courts. *See Baldwin v. Reese,* 541 U.S. 27, 31 (2004) (finding inadequate exhaustion where the state court would have to look at the record beyond the petition or brief to be aware of the federal claim).

7

In his Petition, Sunter raises seven claims: (1) the trial court's *Sandoval* ruling denied

him a fair trial; (2) the court denied him *Brady* material in the form of police memos and witness

interview materials; (3) the trial court's jury instructions denied him a fair trial; (4) the

prosecutor engaged in misconduct; (5) he received ineffective assistance of trial counsel; (6) he

received ineffective assistance of appellate counsel; and (7) he was denied due process "during

the entirety of the trial." (Pet.) Sunter has exhausted Claims 1, 3, 4, 5, and 6. Sunter has not

exhausted Claims 2 and 7, and, moreover, Claim 7 is procedurally barred.

### 2. Exhausted Claims

#### a. Claim 1: *Sandoval* Ruling

Sunter has exhausted his claim that the trial court's *Sandoval* ruling denied him a fair

trial. He raised this claim on direct appeal and in his leave to appeal. (Doc. No. 25, Exs. A, E.).

Respondent argues that this claim is unexhausted and procedurally defaulted. (Doc. No. 26 at

22.) Respondent argues that because Sunter did not assert his *Sandoval* claim as a federal claim

on direct appeal, *i.e.*, it is unexhausted, he cannot return to state court to exhaust this claim

because it is procedurally barred. (*Id.* at 22-23.) Although he did not couch his *Sandoval* claim

in specific constitutional terms, this court construes Sunter's claim liberally and finds that he

asserted the claim in terms of a violation of the Due Process Clause of the Fourteenth

Amendment. *See Ramirez v. Att'y Gen. of State of N.Y.*, 280 F.3d 87, 94-95 (2d Cir. 2001) ("Of

course, citing a specific constitutional provision . . . alerts state courts of the nature of claim."

(internal quotations omitted)); *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (holding that

a court should read a *pro se* petitioner's pleadings liberally and interpret them to raise the

strongest arguments they suggest); *Butler v. Graham*, No. 07 Civ. 6586 (JSR), 2008 WL

8

2388740, at *5 (S.D.N.Y. June 12, 2008) (construing a *pro se* petitioner's *Sandoval* claim to raise a Fourteenth Amendment due process violation).

### b. Claim 3: Jury Instructions

Sunter has exhausted his claim that the trial court's jury instructions denied him a fair trial. He raised this claim in constitutional terms on direct appeal, (Doc. No. 25, Ex. B.), and then sought leave to appeal to the Court of Appeals. (*Id.*, Ex. E.)

### c. Claim 4: Prosecutorial Misconduct

Sunter has exhausted his individual prosecutorial misconduct claims by: (1) raising them in constitutional terms on direct appeal; (2) in his C.P.L. § 440.10 Motion; and (3) by seeking leave to appeal after both the Appellate Division and § 440.10 court rejected the claims. (Doc. No. 25, Exs. A, I, E, M.)

### d. Claim 5: Ineffective Assistance of Trial Counsel

Sunter has exhausted his ineffective assistance of trial counsel claims. He raised those claims in constitutional terms on direct appeal and in his CPL § 440.10 motion. (Doc. No. 25, Exs. B, I.) He also sought leave to appeal after both the Appellate Division and § 440.10 court rejected the claims. (*Id.*, Exs. E, M.)

### e. Claim 6: Ineffective Assistance of Appellate Counsel

Sunter has exhausted his ineffective assistance of appellate counsel claim. He raised this claim in constitutional terms in his motion for writ of error *coram nobis*, by seeking leave to appeal after the Appellate Division denied that motion, and by moving for reconsideration. (Doc. No. 25, Exs. S, V, Z.)

9

### 3. Unexhausted Claim

Sunter did not exhaust his claim that trial court denied his right to *Brady* material before trial or to the examination of witnesses. He neither raised this claim on direct appeal nor in his C.P.L. § 440.10 motion. (Doc. No. 25, Exs. A, I.) The government suggests that because Sunter's *Brady* claim is not record-based, he may yet exhaust the claim by bringing a second C.P.L. § 440.10 motion and appealing if he receives an adverse determination. (Doc. No. 26 at 21). In the interest of judicial economy, however, the Court should exercise its discretion under § 2254 and reach the merits of this unexhausted claim. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *see also Aparicio*, 269 F.3d at 91 n.5; *Johnson v. New York*, 851 F. Supp. 2d 713, 722 (S.D.N.Y. 2012) (finding it economical to address an unexhausted claim on the merits).

### 4. Unexhausted and Procedurally Barred Claim

Sunter failed to exhaust his claim of a due process violation "during the entirety of the trial." (Pet.) He did not assert his denial of due process claim on direct appeal and therefore, did not exhaust this claim. (Doc. No. 25, Exs. A, B.)

Sunter cannot exhaust this claim because he is only entitled to one direct appeal and one application for leave to appeal to the Court of Appeals. *See* C.P.L. § 450.10(1); N.Y. Court R. § 500.10(1); *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). Moreover, Sunter may not seek collateral review. C.P.L. § 440.10(2)(c) bars collateral review of claims that could have been raised on direct review but were not. Therefore, Sunter's claim for a general due process violation is procedurally barred. *See Aparicio*, 269 F.3d at 91-92 (finding that claims raised neither on direct review nor collateral review procedurally barred).

This Court may not review Sunter's procedurally barred claim unless he demonstrates

either (1) "cause" for default and actual "prejudice" from barring the claim, or (2) the failure to

consider the claims will result in a "fundamental miscarriage of justice." *Murray v. Carrier*, 477

U.S. 478, 485, 495 (1986). Sunter does not assert any cause for the default on his claim. A

claim of ineffective assistance of counsel could possibly establish cause for procedural default,

but counsel's representation must be constitutionally deficient. *See Murray*, 477 U.S. at 488-89.

Since appellate counsel's representation was not ineffective (*see infra* Part V, Section G), Sunter

has failed to show cause for his default. Absent a showing of cause for the procedural default,

this Court does not need to consider prejudice. *See McCleskey v. Zant*, 499 U.S. 467, 494

(1991); *Murray*, 477 U.S. at 496 (1986). Additionally, Sunter has not established that there was

a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 325 (1995); *Murray*,

477 U.S. at 496. Therefore, Sunter's general claim of a due process violation "during the

entirety of the trial" is unexhausted and procedurally barred.

## V. DISCUSSION

### A. Standard of Review

The AEDPA constrains a federal court's ability to grant a state prisoner's application for

a writ of habeas corpus regarding claims adjudicated on the merits in state court. *See* 28 U.S.C.

§ 2254. The AEDPA limits issuance of the writ to circumstances in which the state adjudication

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §

2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary

to federal law if the state law applies "a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a

11

set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. Furthermore, in cases

where the state court decision rests on a factual determination, the federal court must find that

the "decision . . . was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## B. *Sandoval* **Claim**

Sunter claims that the trial court's *Sandoval*[1] ruling denied him a fair trial. (Pet. at ¶ 13.)

The Appellate Division found that the trial court properly exercised discretion when it permitted

the prosecutor to use two prior car theft convictions to impeach Sunter's credibility as a witness.

*See Sunter*, 57 A.D.3d at 226. The Appellate Division found that Sunter's prior convictions were

"highly probative of [his] credibility and neither unduly prejudicial nor excessively stale." *Id.*

### 1. Background

At the *Sandoval* hearing, the prosecutor noted that Sunter had ten prior convictions: eight

misdemeanors and two felonies. (*Sandoval* Transcript "*Sandoval* Tr." at 2.) The trial judge

focused the hearing on the felonies. (*Id.* at 3.) The prosecutor reported that both convictions

(one in 1990 and one in 1995) were for criminal possession of stolen property in the third degree.

(*Id.*) Sunter had received prison sentences for each conviction. (*Id.*) Defense counsel raised

three objections. (*Sandoval* Tr. at 3-4.) First, counsel argued that the 1990 conviction was "too

old." (*Id.* at 3.) Second, counsel argued that both convictions were too similar to the crimes

alleged at the trial. (*Id.*) Lastly, counsel believed the prosecution would advance a theory that

Sunter wanted to steal Garcia's car. (*Id.* at 3-4.) Under such a theory, counsel noted, the two

prior convictions would cause juror confusion and be more prejudicial than probative. (*Id.* at 4.)

---

[1] Under *People v. Sandoval*, the trial court may "make an advance ruling as to the use by the prosecutor of prior
convictions or proof of the prior commission of specific criminal, vicious, or immoral acts for the purpose of
impeaching a defendant's credibility." 34 N.Y.2d 371, 374 (1974).

Defense counsel suggested a compromise: if Sunter took the stand, the prosecutor could raise the felony conviction "without delineating the theft case." (*Sandoval* Tr. at 4.) The trial judge refused the compromise and admitted the two felonies, stating, "[I]f he doesn't take the stand they can't hold [the prior felony convictions] against him." (*Id.* at 4.)

On direct examination at trial, Sunter testified that he had felony convictions. (Tr. at 269.) During cross-examination, the prosecutor questioned him on his prior car theft convictions. (*Id.* at 330.) During summation, the prosecutor advanced a carjacking theory of the crime. (*Id.* at 383, 388, 397, 406.) The prosecutor also told the jurors to use common sense in addressing every witness's testimony. (*Id.* at 384.) Lastly, the prosecutor commented on Sunter's convictions to impugn his credibility. (*Id.* at 386.)

In its final instructions, the trial court directed the jury to consider Sunter's previous convictions only to assess his credibility. (Tr. at 455.) The court instructed the jury to use the previous convictions to determine the weight to give Sunter's testimony. (*Id.*) "Under no circumstances" were the jurors to consider Sunter's prior felonies as "proof that he committed any of the crimes with which he is charged in the instant case." (*Id.*)

## 2. Applicable Law

Federal habeas corpus relief does not allow for errors of state law. *Estelle v. McGuire,* 502 U.S. 62, 67 (1991). As to evidentiary issues, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68. The court's role is limited: To determine whether the petitioner's conviction violated federal constitutional or statutory law. *Id.* at 68 (citations omitted). In a challenge to state court evidentiary rulings, habeas relief is available "only where the petitioner 'can show that the error

deprived [him] of a fundamentally fair trial.'" *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988)).

Admission of prior convictions is not a constitutional violation *per se*. *See Spencer v. Texas*, 385 U.S. 554, 560-61 (1967) ("Petitioners do not even appear to be arguing that the Constitution is infringed if a jury is told of a defendant's prior crimes."); *Michelson v. United States*, 335 U.S. 469, 482-86 (1948). For example, the Federal Rules of Evidence permit admission into evidence of a defendant's prior convictions under a probative value versus prejudice test. *See* Fed. R. Evid. 609(a). In principle, an analogous state rule, like *Sandoval*, is valid under the Constitution.

Further, a state court's ruling as to the admissibility of evidence of prior convictions for impeachment purposes rarely reaches constitutional dimension. *See Luce v. United States*, 469 U.S. 38, 42-43; *see generally Pulley v. Harris*, 465 U.S. 37, 41 (1984). Only an error in applying the *Sandoval* rule that was "of such a magnitude as to deny fundamental fairness to the criminal trial" could amount to a constitutional violation. *Woods v. Estelle*, 547 F.2d 269, 271 (5th Cir. 1977). In order to grant habeas relief, a court must apply the *Kotteakos* harmless error standard and determine that any such constitutional violation "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112, 119 (2007) (confirming continued applicability of *Brecht* under the AEDPA).

### 3. The Trial Court's *Sandoval* Ruling Was Not a Constitutional Deprivation of Sunter's Right to a Fair Trial

Sunter has not demonstrated how the trial court's ruling was contrary to established law on admission of prior convictions. *See, e.g., Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (finding no constitutional error in trial court's application of the "excited utterance" exception to

14

the hearsay rule). Under New York law, theft is a crime of dishonesty. *See People v. Sandoval*, 34 N.Y.2d 371, 377 (1974). As such, prior theft convictions are "usually" admissible as impeachment evidence, even if such convictions are similar to the crimes charged at the particular trial. *Sandoval*, 34 N.Y.2d at 378.

In this case, the trial court allowed only the two felonies for impeachment purposes. (*Sandoval* Tr. at 3-4.) Details of his prior convictions did not deny Sunter a fundamentally fair trial because the evidence of his guilt was overwhelming. *See, e.g., Rohit v. Conway*, No. 03 Civ. 1817 (SLT)(VVP), 2007 WL 1540268, at *7 (E.D.N.Y. May 24, 2007) (finding on habeas review no substantial constitutional error in state court's *Sandoval* ruling because of overwhelming evidence of petitioner's guilt). Although the prosecutor questioned Sunter about his previous convictions and advanced a carjacking theory of the crime, evidence of robbery and criminal possession of a weapon abounded. (Tr. at 330-31, 383, 388, 397, 406.) First, Sunter accompanied Tyrone when Tyrone stole Garcia's keys and wallet. (*Id.* at 43.) Additionally, Sunter demanded $8,200 from Garcia, picked up a gun, and attempted to flee. (*Id.* at 286-88.) Further, the trial judge directed the jurors to consider Sunter's previous convictions only to assess his credibility. (Tr. at 455.) These factors indicate that the admission of the previous felonies did not have a substantial effect on the jury's verdict and did not amount to a constitutional violation.

For the foregoing reasons, I recommend that Sunter's petition for habeas relief based on the *Sandoval* ruling be **DENIED**.

## C. *Brady* Claim

Sunter claims that the prosecutor denied him *Brady* material; specifically, police memo logs and materials pertaining to witness interviews. (Pet. at ¶ 13; Doc. No. 25, Ex. S.)

15

The prosecution may not suppress evidence favorable to an accused individual "where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." *Brady,* 373 U.S. at 87.  The failure to disclose such evidence is a violation of due process. *Id.*  The government has an affirmative duty to disclose exculpatory material or impeachment evidence, regardless of whether the defense asks for it. *United States v. Jackson,* 345 F.3d 59, 68-69 (2d Cir. 2003).

There are three elements to a successful *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).  Sunter only mentions that he did not receive memo book entries entered by police officers present at the crime scene or interviews of witnesses present during the incident.  (Doc. No. 25, Ex. S at 3.)  He does not demonstrate how such evidence would have been favorable to him.  In addition, he does not show that the prosecution, either actively or inadvertently, suppressed the police logs, if they existed.  Finally, nowhere in his Petition does Sunter state how he was prejudiced as a result.

When a petitioner does not prove the elements required to establish a *Brady* violation, a court may summarily dismiss the claim where the allegations are (1) patently frivolous or false, or (2) vague or conclusory or palpably incredible. *Dory v. Comm'r of Corr.*, 865 F.2d 44, 45, (2d Cir. 1989) (interpreting Rule 4 of the Rules Governing § 2254 Cases ("Habeas Rules")). Here, Sunter's *Brady* claim is vague and conclusory because he does not explain how the alleged withheld evidence constitutes a *Brady* violation.

Therefore, I recommend that Sunter's petition for habeas relief on this ground be **DENIED.**

## D. Improper Jury Instructions

Sunter claims that the trial court denied him "a fair set" of jury instructions "which would enable [the jury] to render a fair verdict." (Pet. at ¶ 13.) He asserts that the trial court erred in: (1) refusing to charge the jury on justification; (2) giving its charge on temporary lawful possession of a weapon; and (3) not providing the "acquittal first" instruction after the jurors announced that they had reached a verdict on four of the charges, without agreeing on the top count of attempted murder. (Doc. No. 25, Ex. B at 5, 18-22.)

### 1. Applicable Law

"[I]n order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001). When one alleges error in a jury instruction, one must establish "not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right guaranteed to the defendant by the Fourteenth Amendment. *Id.* at 125. Not all deficiencies rise to the level of a due process violation. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004). The question is whether the offending instruction "so infected the entire trial that the resulting conviction violates due process." *Id.* Due process, however, does not require giving a jury instruction when the evidence does not support giving such a charge. *See Blazic v. Henderson*, 900 F.2d 534, 541 (2d Cir. 1990). Moreover, where the alleged error is one of omission, it "is less likely to be prejudicial than a misstatement of the law," thereby making the petitioner's burden "especially heavy." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

## 2. Denial of Justification Instruction

Sunter claims that the trial court erred in denying his request for a charge on justification
on criminal possession of the gun. (Doc. No. 25, Ex. B at 5, 18-21.) The evidence, however, did
not support a self-defense theory. In New York, a person may use deadly physical force "upon
another person" when "[t]he actor reasonably believes that such other person is using or about to
use deadly physical force." N.Y. Penal Law § 35.15 (McKinney 2004).

At trial, the court found that the evidence failed to support a finding that Sunter needed to
use deadly physical force against Garcia or anyone else for two reasons. (*Id.* at 352.) First,
Sunter testified that he shot toward the ground and not at Garcia. (*Id.* at 287.) Second, New
York law only allows for justification if a person uses deadly physical force "upon another
person." N.Y. Penal Law § 35.15 (McKinney 2004). Because Sunter shot at the ground and not
at another person in self-defense, the trial court refused Sunter's request for a justification
charge. The trial court's denial of Sunter's request was reasonable and did not violate due
process. *See Blazic*, 900 F.2d at 541. Sunter has failed to establish, therefore, that the Appellate
Division's finding of meritlessness was contrary to, or an unreasonable application of, clearly
established Supreme Court law.

## 3. Court's Temporary Possession Charge

Sunter's claim that the court's charge on temporary possession of a weapon "usurped"
the jury's fact-finding role also lacks merit. (Doc. No. 25, Ex. B at 5.) A defendant's right to a
fair trial requires that the jury be free to weigh all the evidence presented in the case in deciding
whether the prosecution has proven every element of the alleged crime. *See Callahan v.
LeFevre*, 605 F.2d 70, 74 (2d Cir. 1979). At the charge conference, the court agreed to deliver
defense counsel's requested temporary possession charge. (Tr. at 352.) The trial court's

18

instruction mirrored the model charge.[2] The court instructed the jury that: (1) under certain circumstances, temporary possession of a weapon may be lawful; (2) temporary lawful possession is a fact question for the jury; (3) the jury was free to consider several factors in its temporary lawful possession determination; (4) the prosecution had the burden to prove Sunter's guilt beyond a reasonable doubt; and (5) the prosecution had to disprove the defense of temporary unlawful possession beyond a reasonable doubt. (*Id.* at 456-58.) Because the court's charge allowed the jury to consider several factors in weighing the evidence and reminded them of the prosecution's burden of proof, Sunter cannot demonstrate that the court "usurped" the jury's fact-finding role.

### 4. Denial of Acquittal-First Instruction

Finally, Sunter contends that the trial court erred by not giving an acquittal-first instruction after the jury announced a verdict on four of the charges without agreeing on the top count of attempted second-degree murder. (Doc. No. 25, Ex. B at 21-22.) Sunter's claim lacks merit because he misunderstands the purpose of that instruction.

An acquittal-first instruction provides that in cases involving lesser-included charges, the court must instruct the jury to consider a lesser-included offense as an alternative only after acquittal of the greater charge. *See People v. Helliger*, 730 N.Y.S.2d 846 (Sup. Ct. 2001). In *Helliger*, which Sunter cites, the court submitted four charges to the jury: second-degree murder and first-degree manslaughter ("the greater offenses"), and second-degree manslaughter and criminally negligent homicide ("the lesser-included offenses"). *See id.* In such a case, an acquittal-first instruction applies because there are greater and lesser-included offenses for a jury to consider.

---

[2] *See* N.Y. State Unified Court Sys., Instructions of General Applicability, *Possession: Temporary* (July 23, 2015, 4:43 PM), http://www.nycourts.gov/judges/cji/1-General/CJI2d.Possession_Temporary.pdf.

Because robbery and weapon-possession are not lesser-included charges of attempted

murder, there was no need for acquittal-first charge instruction.[3] Therefore, I recommend that

Sunter's petition for relief based on improper jury instructions be **DENIED**.

## E. Prosecutorial Misconduct

Sunter claims that the prosecutor committed misconduct in summation because he: (1)

went outside of the record in discussing the evidence by responding to defense counsel's

summation regarding bullets found on the street; (2) invited jury speculation regarding a car

mechanic's ability to profit from stolen cars; (3) "mock[ed]" Sunter's testimony; (4) improperly

vouched for the prosecution's witnesses; and (5) shifted the burden of proof to Sunter by

suggesting that Sunter bore the burden of explaining his appearance on the videotape. (Doc. No.

25, Ex. A at 21-28).

### 1. Applicable Law

Prosecutorial misconduct cannot give rise to a constitutional claim unless the

prosecutor's acts, assessed "in the context of the entire trial," were "egregious." *Donnelly v.

DeChristoforo*, 416 U.S. 637, 639, 647-48 (1974). "[I]t is not enough that the prosecutor's

remarks were undesirable or even universally condemned," because the "relevant question is

whether the prosecutor['s] comments so infected the trial with unfairness as to make the resulting

conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations

and quotations omitted). It is a "rare case[ ] where the improper comments in a prosecutor's

summation were so numerous and, in combination, so prejudicial that a new trial is required."

*Floyd v. Meachum*, 907 F.2d 347, 348 (2d Cir. 1990). Finally, "[i]nappropriate prosecutorial

---

[3] *See* C.P.L. § 1.20[37] ("When it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree, the latter is, with respect to the former, a 'lesser included offense.'")

20

comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11 (1985).

### 2. Mischaracterization of Evidence

Sunter claims that the prosecutor mischaracterized evidence by asserting that: (1) Sunter testified that Garcia had planted bullets at the crime scene; and (2) Sunter knew how to profit from a stolen car because he was a mechanic. (Doc. No. 25, Ex. A at 21-23.) Neither of these claims has merit. The first comment was an apparent response to a suggestion that Garcia and Bello planted bullets near the crime scene. (Tr. at 229.) Defense counsel asked a detective present at the crime scene if he knew "whether or not someone actually placed [the bullets]...there on the ground." (*Id.*) The prosecutor did not say that Sunter testified that Garcia had planted bullets, but instead sought to undermine the suggestion that the officers had. (*Id.* at 415.) The prosecutor said, "Mr. Garcia and Ms. Bello get together, they concoct this grand plan to. . . run upstairs and get some bullets and put some on the ground, that will prove that the gun jammed. . . That makes no sense whatsoever." (*Id.*)

Sunter believes the second comment is improper because that comment (that mechanics are able to profit from stolen cars) is outside the record. (Doc. No. 25, Ex. A at 23.) First, a prosecutor can discuss the possible motive behind a defendant's action before the jury. *See People v. Molineux*, 168 N.Y. 264, 294-97 (1901). In addition, the prosecutor could use Sunter's prior car theft convictions to impeach his credibility. Last, while undesirable, they are not so numerous and excessive as to require a new trial. *See Darden*, 477 U.S. at 181; *Floyd*, 907 F.2d at 348.

21

### 3. Bolstering Claim

Sunter argues that the prosecutor improperly vouched for Garcia and bolstered him when the prosecutor asked the jurors, "What reason does . . . Garcia have to lie about the defendant?" (Doc. No. 25, Ex. A at 25 (citing Tr. at 531-33).) Defense counsel, however, had accused Garcia of lying. (Tr. at 277.) In response, the prosecutor was entitled to ask "Why?" While a prosecutor may not vouch for the credibility of a witness, he can respond to "an argument that impugns his integrity or the integrity of his case," and when defense counsel attacks the prosecutor or credibility of his witness, "the prosecutor is entitled to reply with rebutting language suitable to the occasion." *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005). The prosecutor's comment, therefore, constituted a fair response to defense counsel's remarks.

### 4. Mocking Testimony Claim

Sunter claims that the prosecutor improperly "mock[ed]" his testimony in summation, especially when he called Sunter's testimony "ridiculous," "absurd," and said that he had "lied." (Doc. No. 25, Ex. A at 24-25; Tr. at 401-11.) The prosecutor's remarks followed Sunter's testimony and defense counsel's summation. (*Id.*) As to the propriety of the prosecutor's language, "[u]se of the words 'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory." *United States v. Coriaty*, 300 F.3d 244, 255 (2d Cir. 2002). The prosecutor's remarks in this instance were not excessive; they were a direct retort to defense counsel's characterizations and to Sunter's testimony. They do not constitute prejudice. *See id.* at 255.

### 5. Shifting the Burden of Proof

Sunter claims the prosecution shifted the burden of proof to Sunter by stating that no evidence brought up by the defense "create[d] a reasonable doubt" and Sunter failed to explain his appearance on a videotape of the incident. (Doc. No. 25, Ex. A at 26-27; Tr. at 415.) The prosecutor's attempt to focus the jury's attention on holes in the defense's theory does not shift the burden of proof. *See United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996) (finding no burden-shifting error in prosecutor's comment attempting to focus the jury on problems in the defense's theory). This line of argumentation is justified where, as stated above, the credibility of witnesses on both sides was at issue.

For the foregoing reasons, I recommend that Sunter's petition for habeas relief on prosecutorial misconduct grounds be **DENIED**.

### F. Ineffective Assistance of Trial Counsel

Sunter claims that he received ineffective assistance of trial counsel because he did not: (1) object to the prosecution's theory of the crime that was not included in the indictment; (2) demand additional discoverable material; (3) adequately protect the trial record; (4) hire a fingerprint expert; (5) thoroughly investigate the facts of the case and pursue potential defense witnesses who could have established a prior relationship between Garcia and Sunter; (6) properly advise Sunter when he told him to reject the prosecution's offer of five years in prison; (7) interview key witnesses, specifically, Officers Torres and Robinson, and an unidentified building superintendent who Garcia testified had helped in apprehending Sunter; (8) view the surveillance videotape and object to its introduction; and (9) adequately cross-examine Garcia, Bello, and Officer Robinson. (Doc. No. 25, Exs. B at 9-10, I at 5, 8, 17-20, 23, 51-52.)

23

### 1. Applicable Law

A convicted defendant's ineffective assistance of counsel claim consists of two prongs: performance and prejudice. *See id.* at 687. First, the defendant must show that defense counsel's performance was deficient. *Id.* Counsel's errors must be so serious as to deprive defendant of counsel as understood by the Sixth Amendment. *Id.* A defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* A habeas court reviewing an ineffective assistance claim must be "doubly deferential" in reviewing ineffective assistance claims under both 28 U.S.C. § 2254(d)(1) and *Strickland. See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) *(per curiam)*). The reviewing court must also "strong[ly]" presume that the attorney's conduct and judgment were reasonable. *Strickland*, 466 U.S. at 688-89.

Second, a defendant must demonstrate that the deficient performance prejudiced the defense. *Id.* at 687. Counsel's errors must be so serious as to deprive the defendant of a fair trial, one whose result is reliable. *Id.* Errors by counsel, including those that are professionally unreasonable, will not constitute ineffective assistance, if the error had no adverse effect on the trial's outcome. *Id.* Prejudice is assumed when there exists a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt regarding a defendant's guilt. *Id.* at 695.

### 2. Effective Assistance

Sunter received effective assistance of trial counsel. First, we consider possible errors by counsel in the aggregate, *Lindstadt v. Keane*, 239 F.3d 191, 199-200 (2d Cir. 2001), noting the difficulty of proving ineffective assistance "when counsel's overall performance indicates active and capable advocacy." *Harrington v. Richter*, 562 U.S. 86, 111 (2011). Sunter's counsel

24

provided effective representation despite the evidence against Sunter. Counsel pursued a

consistent defense theory throughout the trial: The incident was a drug deal gone awry and

petitioner only possessed and fired the gun in self-defense. (Tr. at 24-26.) Counsel maintained

that theory in his opening statement, in cross-examination of prosecution witnesses, in direct

examination of Sunter, and in his closing argument. (*Id.* at 24-27, 85-86, 132-34, 274-93, 366-

70.) Counsel also requested jury instructions on justification and temporary possession of a

weapon. (*Id.* at 352-55.) Last, counsel moved to dismiss the charges and articulated grounds for

a mistrial. (*Id.* at 436-40.) The record supports the § 440.10 court's finding that Sunter received

effective representation.

### 3. Sunter's Individual Ineffective Assistance of Trial Counsel Claims

#### a. New Theory of the Case

Sunter contends that his trial counsel was ineffective because he did not object to the

prosecutor's theory of the crime that was not part of the indictment. (Doc. No. 25, Ex. I at 5.)

Sunter claims that he was unfairly surprised when the prosecutor proceeded to trial under the

theory that he attempted to steal Garcia's car, and that his counsel was derelict in his duties in

allowing the prosecutor to pursue that theory before the jury. (*Id.*) The prosecutor, however, can

discuss the possible motive behind a defendant's action at argument before the jury. *See People

v. Molineux*, 168 N.Y. 264, 294-97 (1901). Here, the prosecutor charged Sunter with robbing

Garcia of his car keys. (Tr. at 14.) Without assuming which version of events is correct, the

prosecutor was allowed to posit that Sunter's motive was to steal Garcia's car.

#### b. Additional Discovery

Sunter's claim that counsel should have demanded additional discovery or *Rosario*

material also lacks merit. (Doc. No. 25, Ex. I at 17-18.) The § 440.10 court found no evidence

that "any *Rosario* material exists that was not provided to the defense." (Doc. No. 25, Ex. L at

9.) Defense counsel had requested *Rosario* material and received a packet "half an inch thick."

(Colloquy at 2-5.) Because there is no deficient performance, there is no prejudice. Sunter's

claim on this ground is speculative.

### c. Prosecutor's Summation

Sunter claims that trial counsel should have objected to the prosecutor's summation

remarks, specifically that: (1) Sunter had a long-standing drug dealing relationship with Garcia;

(2) contrary to Sunter's testimony, "everyone" saw Sunter shooting at Garcia; and (3) Sunter

attempted to steal Garcia's car. (Doc. No. 25, Ex I. at 23; Tr. at 386, 412, 427.) First, Sunter

claims counsel should have objected when the prosecutor assumed, *arguendo*, that Sunter had a

long-standing drug dealing relationship with Garcia. (Tr. at 386.) As discussed above, the

prosecutor's argument was a fair comment on the evidence and would not substantially influence

the jury's verdict. Second, counsel did not err when he did not object to the prosecutor's

comment that "everyone" saw Sunter shooting directly at Garcia (*Id.* at 412.) Here, the

prosecutor stated that "everyone else [referring to Garcia and Bello] says he was shooting at Mr.

Garcia." (*Id.* at 412.) Last, counsel did not err in not objecting to the prosecutor's argument that

Sunter was trying "to steal [Garcia's] car." (Tr. at 427.) Again, the prosecutor's argument was a

fair comment on the evidence. It was also a fair retort to defense counsel's argument that the

evidence was consistent with a drug deal and not a carjacking. (Tr. at 360.)

### d. Fingerprint Expert

Counsel did not err in not hiring a fingerprint expert. (Doc. No. 25, Ex. I at 25.) At trial,

the prosecution called in a criminalist, who testified that she was unsuccessful in lifting latent

fingerprints off the gun. (Tr. at 247-49.) The criminalist testified that she could not pull any

26

fingerprints from shell casings because the heat from the bullet evaporates any moisture on the casing. (*Id.* at 247.) She also testified that she ran four different tests to find either patent or latent prints. (*Id.* at 248-49.) Defense counsel may have believed that any additional tests would have been redundant. With ineffective assistance of counsel claims, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. at 690 (1984). As a result, this claim lacks merit.

### e. Case Investigation and Potential Witnesses

Sunter claims that trial counsel did not thoroughly investigate the facts of the case and pursue potential defense witnesses. (Doc. No. 25, Ex. I at 8-16.) Sunter claims that counsel failed to investigate evidence of a prior relationship between Garcia, Bello, and himself. (Ex. I at 8-16.) Sunter admitted in his C.P.L.§ 440.10 motion, however, that counsel investigated his claims of a prior relationship. (*Id.* at 19-20.) As the § 440.10 court found, the fact that the investigation did not produce evidence supporting Sunter's trial testimony did not render counsel ineffective. (Doc. No. 25, Ex. L at 9.) Sunter's claim of deficient trial counsel investigation is meritless.

### f. Officer Interviews

Sunter's claim that his trial attorney was ineffective because he did not interview Officers Torres and Robinson, as well as an unidentified superintendent is meritless. (Doc. No. 25, Ex. B at 9.) There is no evidence that counsel did not meet with the witnesses. More important, Sunter does not demonstrate how counsel's alleged failure prejudiced him at trial.

27

### g. Plea Offer Advice

Sunter claims that trial counsel was ineffective because counsel allegedly advised him to reject the prosecution's plea offer of five years in prison on attempted first-degree robbery. (Doc. No. 25, Ex. I at 51-52.) Leading up to trial, the prosecution offered a sentence of five years for a guilty plea to first-degree robbery (Doc. No. 25, Ex. J at 29-30.) The plea bargain was the lowest sentence the prosecution could offer. During a bench conference prior to trial, the trial judge convinced the prosecution to again offer the five-year plea. (Ex. J at 30.) The defense attorney stated it was unlikely Sunter would take that sentence. (*Id.*) The trial judge asked defense counsel to confer with Sunter to remind him of his possible liability. (*Id.*) Sunter refused the deal, saying "that he wanted to go to trial." (*Id.*) Based on the above, it seems defense counsel performed his duty of assistance. *See Strickland v. Washington*, 466 U.S. at 688 (finding one of counsel's duties is to consult with the defendant on important decisions).

### h. Surveillance Videotape

Sunter's claim that trial counsel was ineffective because he allegedly did not view the surveillance videotape before trial and object to its introduction is meritless. (Doc. No. 25, Ex. B at 10.) Although counsel did not challenge the videotape's introduction into evidence, counsel's decision may have been strategic, given the defense theory that Sunter only possessed a gun in self-defense.

### i. Cross-Examination of Prosecution Witnesses

Sunter's claim that counsel did not adequately cross-examine Garcia, Bello, and Officer Robinson lacks merit. The decision to engage in cross-examination, and the extent and manner of such cross-examination, are strategic in nature and do not support an ineffective assistance claim. *See Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002). Counsel elicited through

28

Officer Robinson that West 136th Street was a drug prone location. (Tr. at 129.) Counsel also

elicited that at the time of Sunter's arrest, Sunter had told Officer Robinson that Garcia had

stolen his money and he owed Sunter $8,000. (Tr. at 132, 142.) Further, counsel cross-

examined Garcia and Bello in great detail about the incident, about the surveillance videotape

and about Garcia's arrest for hitting Bello. (Tr. at 65-90, 193-217.) These examples

demonstrate that trial counsel provided Sunter with effective assistance.

     As a result, I recommend that Sunter's petition for habeas relief on ineffective assistance

of trial counsel grounds be **DENIED**.

## G. Ineffective Assistance of Appellate Counsel

     Sunter claims that he received ineffective assistance of appellate counsel in connection

with his *coram nobis* motion and the motion for reconsideration. (Doc. No. 25, Exs. S, Z.) He

contends that his appellate counsel did not argue that: (1) the prosecutor elicited perjured

testimony; (2) he received ineffective assistance of trial counsel; (3) the prosecution committed

*Rosario* and *Brady* violations; (4) the prosecutor made improper arguments in summation; and

(5) he was entitled to a justification charge at trial. (*Id.*.)

### 1. Applicable Law

     The test for claims of ineffective trial counsel articulated in *Strickland* also applies to

claims of ineffective appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). The

petitioner must show that his counsel was objectively unreasonable; more specifically, that

"counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising

them." *Smith*, 528 U.S. at 285. A reviewing court strongly presumes adequate assistance and

reasonable professional judgment. *Strickland*, 466 U.S. at 689-90. Additionally, the petitioner

must demonstrate prejudice; specifically, a reasonable probability that his claim would have prevailed on appeal. *See Mayo v. Henderson*, 13 F.3d 528, 534 (2d. Cir. 1994).

### 2. Performance and Prejudice

Appellate counsel performed adequately and did not omit "significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Counsel argued that: (1) the jury's verdict was against the weight of the evidence; (2) the trial court's *Sandoval* ruling was an abuse of discretion; (3) the prosecutor committed misconduct in summation; and (4) his sentence should be reduced. (Doc. No. 25, Ex. A.) Counsel ultimately persuaded the Appellate Division to reduce Sunter's sentence by five years. *See Sunter*, 57 A.D.3d at 226.

As discussed above, the appellate claims of ineffective assistance of counsel fail because the court finds no merit in the trial claims.

Therefore, I recommend that Sunter's petition for habeas relief on ineffective assistance of appellate counsel grounds be **DENIED**.

### VI. CONCLUSION

For the foregoing reasons, I recommend that Sunter's petition be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Colleen McMahon, 500 Pearl Street, Room 1640, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* 28 U.S.C. § 636(b)(1) (West Supp.

1995); Fed. R. Civ. P. 72, 6(a), 6(e); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*).

**DATED: August 12, 2015**
**New York, New York**

                                        **Respectfully Submitted,**


                                        **The Honorable Ronald L. Ellis**
                                        **United States Magistrate Judge**

The Court mailed a copy of this Report and Recommendation to:

Male Sunter
06-A-4107
Eastern New York Correctional Facility
P.O. Box 338
Napanoch, NY 12458